WIERINGA v BLUE CARE NETWORK

Docket No. 160244. Submitted April 12, 1994, at Grand Rapids.
    Decided October 3, 1994, at 9:20 A.M. Leave to appeal sought.

    William R. Wieringa ánd others brought an action in the Kent
        Circuit Court against Blue Care Network, seeking a declaration
        concerning their rights to the proceeds from a third-party tort
        action they settled with the insurer of a motorist with whom
        they had an automobile accident in Pennsylvania. Blue Care
        Network, the plaintiffs' primary health insurer pursuant to the
        plaintiffs' coordinated no-fault insurance coverage and which
        had paid the plaintiffs' medical expenses, claimed a right to the
        settlement proceeds pursuant to the subrogation clause of its
        insurance contract. The court, Dennis B. Leiber, J., granted
        summary disposition for the plaintiffs and awarded them the
        proceeds. Blue Care Network appealed.

    The Court of Appeals held:

    Benefits paid by a health insurer to an insured who is injured
        in an automobile accident while also covered by a no-fault
        insurance policy that provides for the coordination of benefits
        substitute for no-fault personal protection insurance benefits
        otherwise payable. The subrogation rights of the health insurer
        with respect to any tort recovery by the insured are subject to
        MCL 500.3116; MSA 24.13116, which expressly prohibits in-
        surer reimbursement from an insured's third-party tort recov-
        ery where, as here, the recovery is for noneconomic loss.

    Affirmed.

INSURANCE — NO-FAULT — HEALTH — COORDINATION — SUBROGA-
    TION.

    The subrogation rights of a health insurer with respect to a third-
        party tort recovery secured by an insured for injury in an
        automobile accident while the insured is covered by a coordi-
        nated no-fault insurance policy are subject to the no-fault act,
        which prohibits insurer reimbursement from an insured's third-

REFERENCES
Am Jur 2d, Automobile and Insurance §§ 348, 443.
No-fault: right of insurer to reimbursement out of recovery against
    tortfeasor. 69 ALR3d 830.

party recovery where the recovery is for noneconomic loss (MCL 500.3116[4]; MSA 24.13116[4]).

*Dilley, Dewey, Damon & Condon, P.C.* (by *Jonathan S. Damon*), for the plaintiffs.

*Schenk, Boncher & Prasher* (by *Frederick J. Boncher* and *Curtis D. Rypma*), for the defendant.

Before: MICHAEL J. KELLY, P.J., and HOOD and S. B. MILLER,* JJ.

HOOD, J. Defendant Blue Care Network appeals as of right the trial court's order denying defendant's motion for summary disposition and granting summary disposition in favor of plaintiffs. We affirm.

The relevant facts are undisputed. Plaintiffs, who are Michigan residents, were injured in an automobile accident while traveling in Pennsylvania. At the time of the accident, defendant was plaintiffs' health insurer. Plaintiffs were also insured under a coordinated motor vehicle insurance policy issued by Wolverine Mutual Insurance Company. Under the coordinated policy, defendant became the primary health insurer for plaintiffs, while Wolverine was designated the secondary insurer. Consequently, defendant, as the primary insurer, paid medical expenses in the amount of $29,716.44 on behalf of plaintiffs for injuries sustained in the accident.

Plaintiffs subsequently instituted a third-party tort claim against Anthony T. Gonczarow, who drove the other vehicle involved in the accident. Like plaintiffs, Mr. Gonczarow did not live in Pennsylvania at the time of the accident. He was an Indiana resident. Before plaintiffs actually filed

* Circuit judge, sitting on the Court of Appeals by assignment.

their claim, Gonczarow and his insurer, Hawkeye-Security Insurance Company, agreed to settle. The settlement amount exceeded the $29,716.44 currently in dispute. However, because defendant had asserted a lien against the settlement, seeking reimbursement of the $29,716.44, Hawkeye issued two checks totaling $29,716.44 to plaintiffs and defendant jointly (one check for $27,439.74 was made payable to plaintiffs William and Barbara Wieringa and defendant and one check for $2,276.70 was made payable to Nikole Wieringa and defendant). The checks were held in escrow pending resolution of this matter.

Plaintiffs filed a declaratory action, asserting that they were entitled to the escrowed funds. Plaintiffs also claimed that defendant's lien was void. Defendant then filed its own declaratory action against plaintiffs, asserting that it was entitled to the $29,716.44 as reimbursement for medical expenses pursuant to the subrogation language of the insurance contract. Competing motions for summary disposition were filed. The trial court granted plaintiffs' motion for summary disposition, entered a declaratory judgment against defendant, and awarded plaintiffs the escrowed funds. Defendant claims that the trial court erred in granting summary disposition and declaratory relief to plaintiffs. We disagree.

In reviewing a trial court's decision to grant summary disposition, this Court conducts a review de novo to determine whether the pleadings showed that a party was entitled to judgment as a matter of law or whether affidavits or other documentary evidence showed that no genuine issue of material fact existed. MCR 2.116(I)(1); *Asher v Exxon Co, USA,* 200 Mich App 635, 638; 504 NW2d 728 (1993). If either inquiry results in an

affirmative response, the trial court should have rendered judgment without delay. *Id.*

Defendant claims that it is entitled to reimbursement pursuant to the subrogation clause contained in the insurance contract. More specifically, defendant argues that the trial court erred in treating it, a health and accident insurer, as a no-fault insurer and treating benefits it paid to plaintiffs as no-fault benefits. Defendant asserts that it should not be required to comply with the requirements of the no-fault act simply because plaintiffs elected to coordinate insurance coverage and look to defendant for primary no-fault coverage. According to defendant, it is not a no-fault insurer and, thus, the language of the contract should control.

Defendant relies on *Auto Club Ins Ass'n v New York Life Ins Co,* 440 Mich 126; 485 NW2d 695 (1992), in support of this position. In that case, Auto Club Insurance Association, a no-fault insurance carrier, brought an action against New York Life Insurance Company, a health insurance carrier, seeking reimbursement for coordinated medical expenses paid to an insured for injuries sustained in an automobile accident. New York Life moved for summary disposition, claiming that Auto Club's suit was barred because it had not been filed within the one-year limitation period provided in § 3145(1) of the no-fault act, MCL 500.3145(1); MSA 24.13145(1). The trial court denied New York Life's motion for summary disposition and found § 3145 inapplicable. In so doing, the trial court concluded that Auto Club's suit was not an action for personal protection insurance benefits, but rather an action for health and accident benefits under the insurance contract issued by New York Life. Therefore, the trial court concluded that the action was governed by the six-

year statute of limitations applicable to contract actions.

A panel of this Court reversed the trial court's decision, 187 Mich App 276; 466 NW2d 711 (1991), and concluded that no matter how the action was characterized, it was one for recovery of no-fault benefits paid. Therefore, the one-year limitation period under the no-fault act was deemed applicable. This decision was reversed by the Michigan Supreme Court. The Supreme Court reaffirmed the trial court's conclusion that the action was not controlled by the one-year period of limitation set forth in the no-fault act but, instead, was governed by the six-year period of limitation for contract actions. In so concluding, the Supreme Court stated that, "[e]ven though, as a result of coordination, the obligation of NY Life to provide benefits became primary, it does not follow that NY Life was transformed into a no-fault insurer any more than it follows that the benefits due under its policy were transformed into no-fault benefits." 440 Mich 139. In concluding, the Supreme Court stated that § 3145(1) of the no-fault act did not apply to plaintiff's common-law action as subrogee to recover benefits due under the health and accident insurance contract issued by defendant. 440 Mich 140.

Though the issue decided in *Auto Club* (competing statutes of limitations) is unrelated and dissimilar to the question presented here, defendant relies on the above-quoted language to support its argument that the provisions of the no-fault act are inapplicable in this case because it is not a no-fault insurer. Defendant, citing *Auto Club,* contends that even though it was the primary provider under the coordinated no-fault policy and paid medical bills as a result of the accident, it is not a no-fault insurer.

Section 3116(4) of the no-fault act, MCL 500.3116(4); MSA 24.13116(4), which limits the ability of insurers to obtain reimbursement after they pay benefits to insureds, provides:

> *A subtraction or reimbursement shall not be due the claimant's insurer from that portion of any recovery to the extent that recovery is realized for noneconomic loss* as provided in section 3135(1) and (2)(b) or for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the amount recovered by the claimant from his or her insurer. [Emphasis added.]

Defendant argues that it was not placed in the same status as a no-fault insurer simply because plaintiffs elected to coordinate their insurance coverage and defendant was the primary insurer. Therefore, according to defendant, it is not bound by the limitations on reimbursement set forth in § 3116(4). Instead, defendant argues that the subrogation clause contained in the insurance contract should govern. For several reasons, we disagree.

Section 3.04 of the parties' insurance contract provides:

> A. Subrogation means that *Health Plan will have the same right as a Member to recover expenses for treatment of an injury or illness for which another person or organization is legally liable, to the extent Health Plan provides services in such situations.* Health Plan will be subrogated to the Member's right of recovery against the responsible person or organization.
>
> B. The Member agrees, by acceptance of an identification card from Health Plan that, as a condition to receiving benefits and services under this Certificate, the Member will make a good faith effort to pursue recovery from the liable party, *and upon collection of any recoveries from*

*any benefits and services provided by Health Plan
will reimburse Health Plan.* Health Plan shall
have a lien for any benefits and services rendered
on any such recoveries whether by judgment, set-
tlement, compromise, or reimbursement. [Empha-
sis added.]

This clause makes it clear that defendant can
obtain reimbursement under the insurance con-
tract only if plaintiff receives a third-party tort
recovery representing the medical expenses that
defendant already paid. This result is consistent
with our holding in *Great Lakes American Life Ins
Co v Citizens Ins Co,* 191 Mich App 589; 479 NW2d
20 (1991). Unlike *Auto Club, Great Lakes* ad-
dressed the precise issue presented for resolution
in the present case. In *Great Lakes,* we stated:

*The medical insurance benefits paid by plaintiff,
Great Lakes American Life Insurance Company,
substitute for no-fault benefits otherwise payable.
Under such circumstances, the contractual reim-
bursement rights of Great Lakes Insurance are
subject to the limitations of § 3116 of the no-fault
act and are therefore unenforceable.* [*Id.* at 600;
emphasis added.]

Defendant strenuously asserts that this language
is contradicted by the above-referenced statements
of the Supreme Court in *Auto Club,* namely, that
payments made by a health and accident insurer
to an insured following an automobile accident are
not equivalent to no-fault benefits and, thus, the
provisions of the no-fault act do not apply to such
an insurer.

The facts and issue to be resolved in the present
case render the proffered contradiction meaning-
less. *Auto Club* addressed the singular question of
which statute of limitations was applicable to the
facts of that case, nothing more. This issue is not

before us. Moreover, in *Auto Club,* unlike in *Great Lakes* and the present case, § 3116 of the no-fault act was of no consequence. Contrary to defendant's position, the Supreme Court in *Auto Club* did not overrule or modify the *Great Lakes* decision. In fact, no mention of *Great Lakes* was made in the *Auto Club* decision. Therefore, this Court's holding in *Great Lakes* is applicable in the present case and the principle of law set forth in *Auto Club* is inapposite.

Pursuant to *Great Lakes,* we conclude that the trial court properly decided that defendant was precluded from obtaining reimbursement for the medical costs paid on behalf of plaintiffs. Under Pennsylvania no-fault law, plaintiffs could not recover medical or economic expenses in their third-party tort action against Gonczarow in that state. See 75 Pa Cons Stat § 1722. Again, defendant may be entitled to reimbursement only if plaintiffs received a third-party tort recovery representing the medical expenses that defendant already paid. *Great Lakes, supra.* This did not occur in the present case because by law plaintiffs were precluded from recovering the costs of their medical expenses in a third-party tort action.

Additionally, and notwithstanding the fact that plaintiffs were legally precluded from recovering their medical costs in the third-party tort action, where a settlement is silent, this Court will presume that a third-party tort settlement represented noneconomic damages. See *Keys v Travelers Ins Co,* 124 Mich App 602, 605; 335 NW2d 100 (1983). In resolving the impending third-party action against Gonczarow, plaintiffs and Hawkeye did not execute a settlement agreement. Instead, Hawkeye issued two checks to plaintiffs and defendant totaling $29,716.44 for "[f]ull and final settlement of all claims against Anthony T. Goncza-

row." The remainder of the settlement funds were given to plaintiffs. In *Bialochowski v Cross Concrete Pumping Co, Inc,* 141 Mich App 315, 318-319; 367 NW2d 381 (1985), reversed in part on other grounds 428 Mich 219; 407 NW2d 355 (1987), this Court also indicated that similar language, silent with regard to an economic or noneconomic basis for the settlement award, would be presumed to be compensation for noneconomic losses. We so find in the instant case. Therefore, defendant could not obtain reimbursement because the settlement proceeds represented a settlement for expenses other than those medical expenses provided by defendant. *Great Lakes, supra.*

We also reject defendant's assertion that extrinsic evidence supports the conclusion that a portion of plaintiffs' recovery was for economic damages. Defendant suggests that the two settlement drafts issued by Hawkeye to it and plaintiffs in an amount exactly totaling the costs of the previously paid medical bills indicates that Hawkeye in fact compensated plaintiffs for economic damages. It is clear from the record, however, that Hawkeye separated out this amount only because of defendant's imposition of a lien on this portion of the entire settlement. It is not unusual for insurance companies to list the names of both the opposing party and that party's insurer on settlement drafts, leaving those entities to divide or fight for the spoils while protecting the insurers from further litigation.

Plaintiffs were entitled to judgment as a matter of law. *Asher, supra; Great Lakes, supra.*

Affirmed.