JOHNSON v WAYNE COUNTY

Docket No. 169802. Submitted April 6, 1995, at Detroit. Decided
September 1, 1995, at 9:05 A.M. Leave to appeal sought.

Patsy Johnson brought an action in the Wayne Circuit Court
against Wayne County and others, seeking damages for emo-
tional injury allegedly suffered as a result of her confinement
in a courthouse holding cell and a cell in the Wayne County
Jail with the criminal defendant on whose jury the plaintiff
had been sitting before the plaintiff was found in contempt of
court for not appearing at the trail and was sentenced to three
days in jail. The court, Michael J. Talbot, J., granted summary
disposition for the defendants with regard to all the counts of
the plaintiff's complaint. The plaintiff appealed.

The Court of Appeals *held:*

1. Although the plaintiff's claim regarding the alleged denial
of equal protection under Const 1963, art 1, § 2 is one against
the individual defendants only, the plaintiff must show that, by
virtue of Wayne County's custom or policy, Wayne County
deprived her of a constitutional right. Where, as here, a plain-
tiff alleges a constitutional tort against governmental employ-
ees only, the plaintiff must show that the alleged constitutional
violation occurred by virtue of a custom or policy that the
governmental employees were carrying out. The plaintiff's
equal protection claim must fail because she failed to provide
any evidence that, by virtue of a custom or policy, the defen-
dants deprived her of equal protection. The defendants' policy
of placing all prisoners together in the same holding cell unless
there is a known possibility of physical harm did not deprive
the plaintiff of equal protection. The trial court properly
granted summary disposition with regard to the equal protec-
tion claim.

2. The plaintiff failed to show that, by virtue of a custom or

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4, 5, 7;
Municipal, County, School, and State Tort Liability §§ 184, 190;
Penal and Correctional Institutions §§ 190, 192; Public Officers
and Employees § 366.

See ALR Index under Cruel and Unusual Punishment; Emotional
Injury; Prisons and Prisoners; Public Officers and Employees.

policy, the defendants inflicted cruel or unusual punishment on her.

3. Not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials. A prison official violates the Eighth Amendment of the federal constitution only when two requirements are met: the deprivation alleged must be objectively sufficiently serious, and the prison official must have a sufficiently culpable state of mind. Under the second requirement, in cases concerning prison conditions, there must be a showing that the state of mind of the prison official was that of deliberate indifference to inmate health or safety. Here, the plaintiff failed to make a sufficient showing of deliberate indifference to the plaintiff's safety. The plaintiff did not show either that the defendant deputies were aware of a risk of harm or disregarded a risk of harm of which they were aware or that the deputies had knowledge of a known danger and consciously disregarded it. The trial court properly granted summary disposition for the defendants with respect to the claim regarding cruel or unusual punishment.

4. The trial court properly granted summary disposition with regard to the substantive due process claim. The plaintiff failed to present evidence that the defendants, by virtue of a custom or policy, deprived her of due process. The "fair and just treatment" language of Const 1963, art 1, § 17 refers to such treatment in the course of legislative and executive investigations and hearings, neither of which is involved here.

5. The plaintiff failed to present evidence that Wayne County did not maintain a proper policy and system for classifying and segregating certain prisoners from other prisoners known to pose a particular threat of harm to those prisoners. The trial court properly granted summary disposition for Wayne County with regard to the plaintiff's constitutional tort claim.

6. The trial court erred in granting summary disposition with regard to the claim of intentional infliction of emotional distress because reasonable jurors could honestly reach different conclusions with regard to whether the defendants' conduct amounts to gross negligence. Reasonable minds could differ regarding whether the defendants' actions were so reckless as to demonstrate a substantial lack of concern for whether an injury would result. The plaintiff presented sufficient evidence, if believed by a rational trier of fact, to show that the defendants acted in a grossly negligent manner so that they are not covered by governmental immunity.

7. The plaintiff presented sufficient evidence to show that the actions of the defendants were a proximate cause of her injury.

8. Because the plaintiff presented evidence to show that the

defendants' conduct constitutes gross negligence, she may maintain her tort claim. The plaintiff has alleged sufficient facts to support her claim of intentional infliction of emotional distress. The facts alleged by the plaintiff are sufficient to show extreme and outrageous conduct on behalf of the defendants, that they at least acted in a reckless manner, and that the defendants' actions caused the plaintiff's injury. The trial court erred in granting summary disposition with regard to the claim of intentional infliction of emotional distress. That part of the court's order must be reversed and the matter must be remanded for further proceedings regarding that issue.

Affirmed in part, reversed in part, and remanded.

D.C. KOLENDA, J., concurring, wrote separately to stress that there is no inconsistency between the holding in part III and the holdings in parts I and II of the opinion by Judge JANSEN because part III is based on traditional tort analysis and parts I and II involve constitutional torts that are unique and involve standards not applicable to common-law torts. Accordingly, that a set of facts does not prove the former does not mean that they cannot prove the latter.

CAVANAGH, P.J., dissenting with regard to part III of Judge JANSEN's opinion, stated that the evidence was not sufficient to support the plaintiff's claims of gross negligence and intentional infliction of emotional distress. The plaintiff did not allege sufficient facts to sustain her claim of intentional infliction of emotional distress, and the defendants' conduct was not extreme or outrageous. The case should be affirmed in its entirety.

1. CONSTITUTIONAL LAW — TORTS — GOVERNMENTAL EMPLOYEES.

Where a plaintiff alleges a constitutional tort against governmental employees only, the plaintiff must show that the constitutional violation occurred by virtue of a custom or policy that the governmental employees were carrying out.

2. PRISONS AND PRISONERS — CONSTITUTIONAL LAW — CRUEL AND UNUSUAL PUNISHMENT — PRISON CONDITIONS.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment only when two requirements are met: the deprivation alleged must be objectively sufficiently serious, and the prison official must have a sufficiently culpable state of mind; under the first requirement, a claim based on a failure to prevent harm requires a showing that the prisoner is incarcerated under conditions posing a substantial risk of harm; under the second requirement, in

cases involving prison conditions, there must be a showing that
the state of mind of the prison official was that of deliberate
indifference to inmate health or safety; deliberate indifference
arises when a person disregards a risk of harm of which that
person is aware (US Const, Am VIII).

3. CONSTITUTIONAL LAW — TORTS — STATE — AGENTS OF STATE —
     LIABILITY.

Liability should be imposed on the state as a result of action by
agents of the state that amounts to a constitutional tort only
where the action of a state agent implements or executes a
policy statement, ordinance, regulation, or decision officially
adopted and promulgated by that body's officers or governmen-
tal custom even though such a custom has not received formal
approval through the body's official decision-making channels.

4. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — ELE-
     MENTS.

The elements of the tort of intentional infliction of emotional
distress are extreme and outrageous conduct, intent or reckless-
ness, causation, and severe emotional distress; liability for such
a claim has been found only where the conduct complained of
has been so outrageous in character, and so extreme in degree,
as to go beyond all possible bounds of decency, and to be
regarded as atrocious and utterly intolerable in a civilized
community.

*Goodman, Eden, Millender & Bedrosian* (by *Mi-
chael J. Haddad* and *William H. Goodman*), for the
plaintiff.

*Jennifer M. Granholm,* Wayne County Corpora-
tion Counsel, and *W. Steven Pearson,* Assistant
Corporation Counsel, for the defendants.

Before: CAVANAGH, P.J., and JANSEN and D. C.
KOLENDA,* JJ.

JANSEN, J. Plaintiff appeals as of right from an
October 29, 1993, order of the Wayne Circuit Court
granting summary disposition under MCR 2.116(C)
(7) and (10) to defendants with respect to all counts

* Circuit judge, sitting on the Court of Appeals by assignment.

in plaintiff's complaint. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff Patsy Johnson was called to serve as a juror for the criminal trial of Tamara Marie Marshall, who was accused of leading three men into a crack house in the City of Detroit where they tortured and killed, in execution style, six people. The case was dubbed the "St. Aubin Street Massacre."

After sitting through two weeks of trial in September 1990, plaintiff failed to appear at 8:45 A.M. on September 13, 1990. Plaintiff did not appear because she attended a friend of the court hearing concerning her children. Upon plaintiff's arrival at the friend of the court, she was told that someone had called from the courtroom of Judge Tennen (who was presiding over the criminal matter). Plaintiff then went home instead of attending the meeting. While plaintiff was preparing to go to Judge Tennen's courtroom from her house, police officers came by, picked her up, and brought her to Judge Tennen's courtroom.

When plaintiff arrived, the trial was in session, so she sat in the back room in the court for approximately one hour. At 1:26 P.M., Judge Tennen excused the jury and spoke with plaintiff. Judge Tennen explained to plaintiff that she had delayed the proceeding. Plaintiff was found in contempt of court and sentenced to three days in the Wayne County Jail. She was discharged as a juror from the criminal case.

Plaintiff was taken to a holding cell. When the officer opened the door of the holding cell, plaintiff saw Tamara Marshall alone in the cell. Plaintiff was placed in the cell with Marshall. Marshall asked plaintiff if she was Patsy Johnson because Marshall's attorney had told her what had happened. Marshall asked plaintiff questions regard-

ing what the other jurors were thinking about the case. Marshall badgered plaintiff while pacing around the cell. Plaintiff stated that she was astonished, stunned, and scared while in the cell with Marshall. Plaintiff believed that Marshall might inflict bodily harm on her.

Deputy sheriffs looking at plaintiff and Marshall through the window of the cell door allegedly started laughing. Plaintiff was crying and felt intimidated. Plaintiff was in the cell with Marshall for one hour before deputies took Marshall away and left plaintiff alone in the cell. However, Marshall was again placed in the cell with plaintiff for another hour. The deputies then came and escorted plaintiff and Marshall to the Wayne County Jail. Plaintiff and Marshall were handcuffed together during the move.

When they reached the jail, plaintiff and Marshall were placed in a cell with seven other women. Marshall used the telephone in the cell, mentioned plaintiff's name, and told the other party that plaintiff had been serving on her jury. Approximately forty minutes later, Marshall was removed from the jail cell.

After being released from jail on September 17, 1990, plaintiff was hospitalized at St. John Hospital because of a mental breakdown. Over the next year, plaintiff was treated by psychologists and psychiatrists for her psychological injuries. On August 13, 1992, plaintiff filed suit for emotional injuries that she assertedly had sustained during her confinement with Marshall. The trial court ultimately granted summary disposition for defendants with regard to all counts in plaintiff's complaint.

I

We review de novo the trial court's ruling re-

garding a motion for summary disposition. *Wieringa v Blue Care Network,* 207 Mich App 142, 144; 523 NW2d 872 (1994). The trial court granted summary disposition with respect to plaintiff's claims under the Michigan Constitution, Const 1963, art 1, § 2 (equal protection), § 16 (cruel or unusual punishment), and § 17 (due process). These claims only relate to the individual defendants and not to defendant Wayne County.

Although it is not entirely clear from the record, it appears that the trial court granted summary disposition regarding these claims under MCR 2.116(C)(10). MCR 2.116(C)(10) tests the factual basis underlying a plaintiff's claim. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). MCR 2.116(C)(10) permits summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence in favor of the opposing party. MCR 2.116(G)(5); *Radtke, supra.* The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). The court must not make factual findings or weigh credibility in deciding a motion for summary disposition. *Manning v Hazel Park,* 202 Mich App 685, 689; 509 NW2d 874 (1993). Thus, we examine the facts of this case in a light most favorable to plaintiff. *Id.,* p 690.

A

First, plaintiff claims that the trial court erred

in granting summary disposition with regard to her claim alleging denial of equal protection under Const 1963, art 1, § 2.

In *Smith v Dep't of Public Health,* 428 Mich 540, 544; 410 NW2d 749 (1987), aff'd sub nom *Will v Michigan Dep't of State Police,* 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989), in a memorandum opinion, a majority of the justices were of the opinion that a claim for damages against the state arising from a violation by the state of the Michigan Constitution may be recognized in appropriate cases. Two of the justices stated that liability should be imposed on the state only where the action of the state agent implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or governmental custom. *Id.,* pp 642-643. However, two other justices would not limit liability to only those situations where the alleged constitutional violation occurred by virtue of a governmental custom or policy. *Id.,* p 658.

Recently, this Court held that a plaintiff's claim under Const 1963, art 1, § 17 that her procedural due process rights were violated by the defendant city depended upon a showing that, by virtue of a custom or policy, the city deprived her of her property rights without due process of law. *Marlin v Detroit (After Remand),* 205 Mich App 335, 338; 517 NW2d 305 (1994). Thus, in light of *Marlin,* we must determine if plaintiff showed that, by virtue of defendant Wayne County's custom or policy, Wayne County deprived her of a constitutional right.

Although this claim is one against the individual defendants only, we believe that the requirement that a custom or policy be shown to sustain a constitutional tort must also be met. That is, where a plaintiff alleges a constitutional tort

against governmental employees only, the plaintiff must show that the alleged constitutional violation occurred by virtue of a custom or policy that the governmental employees were carrying out. See *Smith, supra,* pp 642-643 (BOYLE, J.).

Plaintiff argues that she was denied equal protection because defendants singled her out to injure and taunt. Plaintiff's equal protection claim must fail because she has failed to provide any evidence that, by virtue of a custom or policy, defendants deprived her of equal protection. Plaintiff has presented evidence that it was the general policy or general procedure of deputy sheriffs to place all prisoners together in the same holding cell unless there was a known possibility of physical harm (see issue II, *infra*). However, we find no evidence that the policy deprived plaintiff of equal protection.

Const 1963, art 1, § 2 requires that "[n]o person shall be denied the equal protection of the laws." Plaintiff has not identified any legislation that discriminates against her. See *Doe v Dep't of Social Services,* 439 Mich 650, 662; 487 NW2d 166 (1992); *Thompson v Merritt,* 192 Mich App 412, 424-425; 481 NW2d 735 (1991). Thus, plaintiff has failed to present any evidence that she was denied equal protection of the law. An equal protection claim is unavailing where a plaintiff alleges that governmental employees "singled her out" (from a group that plaintiff does not identify) to injure and taunt.

Accordingly, the trial court did not err in granting summary disposition for defendants with regard to the equal protection claim.

B

Next, plaintiff argues that the trial court erred

in granting summary disposition regarding her cruel or unusual punishment claim under Const 1963, art 1, § 16.

We do not believe that plaintiff has shown that, by virtue of a custom or policy, defendants inflicted cruel or unusual punishment on her. Although plaintiff has presented evidence that it was the general policy or general procedure of deputy sheriffs to place all prisoners together in the same holding cell unless there was a known possibility of physical harm, we do not believe that she has presented sufficient evidence that the actions of the defendants amounted to cruel or unusual punishment.

The Michigan Constitution prohibits cruel or unusual punishment while the Eighth Amendment of the federal constitution prohibits only those punishments that are both cruel and unusual. Our Supreme Court has noted that this textual difference does not appear to be accidental or inadvertent. *People v Bullock,* 440 Mich 15, 30; 485 NW2d 866 (1992). In determining whether the actions of defendants in this case led to cruel or unusual punishment, we look for guidance to federal cases concerning the Eighth Amendment. *York v Detroit (After Remand),* 438 Mich 744, 757; 475 NW2d 346 (1991).

A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. Deliberate indifference requires a showing that the official was subjectively aware of the risk. *Farmer v Brennan,* 511 US —; 114 S Ct 1970; 128 L Ed 2d 811, 820 (1994). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, ensure that inmates receive adequate food, shelter, and medical care, and take reasonable measures to

guarantee the safety of the inmates. Further, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.,* p 822.

Not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials. A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged must be objectively sufficiently serious, and (2) the prison official must have a sufficiently culpable state of mind. *Id.,* p 823. Under the first requirement, a claim based on a failure to prevent harm requires a showing that the prisoner is incarcerated under conditions posing a substantial risk of harm. Under the second requirement, in prison-conditions cases, there must be a showing that the state of mind of the prison official was that of deliberate indifference to inmate health or safety. *Id.*

In *Farmer,* the United States Supreme Court defined deliberate indifference as subjective recklessness as used in the criminal law. In other words, deliberate indifference arises when a person disregards a risk of harm of which that person is aware. *Id.,* pp 825-827.

In *York,* the plaintiff brought a claim under 42 USC 1983, thus requiring a showing that a municipal custom or policy caused a violation of the decedent's constitutional rights. Our Supreme Court held that where a plaintiff alleges a policy of inaction, such as inadequate police training, the policy may serve as a basis for liability under § 1983 only if the policy evidenced a deliberate indifference to the right of the prisoner. *York, supra,* pp 755-756. The Supreme Court defined deliberate indifference as contemplating knowledge, actual or constructive, and a conscious disre-

gard of a known danger. Mere negligence will not amount to deliberate indifference. *Id.,* p 757.

In the present case, then, we consider whether the deprivation alleged was objectively sufficiently serious and whether the deputies were deliberately indifferent to plaintiff's safety. *Farmer, supra.* We find that plaintiff failed to make a sufficient showing of deliberate indifference. Plaintiff testified at her deposition that she was placed in a holding cell with Marshall. The deputies assertedly laughed at her and made fun of her situation. However, plaintiff never informed the deputies that she feared for her safety and the deputies looked in through the window of the door from time to time. Deputy Mark Javor testified that if he knew that a problem existed between prisoners, he would separate them. Javor did not see a problem between plaintiff and Marshall.

As explained by the United States Supreme Court, deliberate indifference occurs when a person disregards a risk of harm of which that person is aware. *Farmer, supra.* There is no evidence that any of the deputies involved in placing plaintiff in the cell and watching her were aware of a risk of harm or disregarded a risk of harm of which they were aware. Further, plaintiff has not shown any knowledge and conscious disregard of a known danger. *York, supra.* Therefore, we are unable to conclude that the actions of the deputies constituted cruel or unusual punishment.

Accordingly, the trial court did not err in granting summary disposition to defendants with respect to the cruel or unusual punishment claim.

C

Next, plaintiff argues that the trial court erred in granting summary disposition regarding her

substantive due process claim. She argues that defendants violated her right to be free from denial of due process and the right to fair and just treatment under Const 1963, art 1, § 17.

We conclude that plaintiff's due process claim must also fail. Plaintiff has misconstrued the due process right under the Michigan Constitution. Const 1963, art 1, § 17 provides that "[n]o person shall be . . . deprived of life, liberty or property, without due process of law." It further states that the "right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

Plaintiff has presented no evidence that defendants, by virtue of a custom or policy, deprived her of due process. Moreover, the "fair and just treatment" language refers to such treatment in the course of legislative and executive investigations and hearings. This case does not implicate legislative or executive investigations and hearings.

Accordingly, the trial court did not err in granting summary disposition to defendants regarding plaintiff's due process claim.

II

Plaintiff next argues that the trial court erred in granting summary disposition to defendant Wayne County regarding her constitutional tort claim. It is plaintiff's contention that Wayne County failed to maintain a proper policy and system for classifying and segregating a prisoner from other prisoners known to pose a particular threat of harm to that prisoner.

First, plaintiff has failed to identify under which section of the Michigan Constitution this claim is

based. A plaintiff must first establish the constitutional violation itself before a damage remedy for injury under the Michigan Constitution can be recognized. *Smith, supra,* p 648 (Boyle, J.); *Marlin, supra,* p 338. Although plaintiff relies on *Rushing v Wayne Co,* 436 Mich 247; 462 NW2d 23 (1990), in support of her position, we do not believe that *Rushing* controls because that case involved a claim brought under 42 USC 1983. Plaintiff in the present case has not brought her claim under 42 USC 1983.

In her complaint, plaintiff reiterates the rights enumerated under Const 1963, art 1, § 2 (equal protection), § 16 (cruel or unusual punishment), and § 17 (due process). However, plaintiff has not shown that, by virtue of a custom or policy, the county deprived her of these constitutional rights. In *Smith,* Justice Boyle explained that liability should be imposed on the state only where the action of a state agent implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or governmental custom even though such a custom has not received formal approval through the body's official decision-making channels. *Smith, supra,* p 643 (Boyle, J.).

Plaintiff relies on the deposition testimony of Deputy Mark Javor. Javor was asked whether there was a concern in his mind that Marshall, who was being tried for five counts of first-degree murder, was in the same cell with plaintiff, who was a former juror on Marshall's case. Javor responded that plaintiff, who was discharged as a juror when she was held in contempt, was a prisoner and this resulted in a certain response. Javor stated:

Ms. Johnson is off the jury, so it would be one

thing if she was still going to be on the jury, but she's off the case, off the jury. Limited facilities and manpower, and just our general policy, like I said, we have locked up jurors before for contempt of court, and once they're found in contempt, they're off the case, put them in the back with the other men, even if it's the defendants that are back there. Just general procedure.

Javor also stated that the only time that the deputy sheriffs would isolate anyone was when there was a known possibility of physical harm.

Javor's testimony indicates that there was a policy of segregating certain prisoners whenever there was a known possibility of physical harm if other prisoners were placed in the same cell. Thus, this directly contradicts the allegation in plaintiff's complaint that Wayne County failed to maintain a proper policy and system for classifying and segregating certain prisoners from other prisoners known to pose a particular threat of harm to those prisoners.

Accordingly, plaintiff has failed to present evidence that defendant Wayne County did not maintain a proper policy and system for classifying and segregating certain prisoners from other prisoners known to pose a particular threat of harm. The trial court, therefore, did not err in granting summary disposition to Wayne County regarding plaintiff's constitutional tort claim.

### III

Last, plaintiff argues that the trial court erred in granting summary disposition with regard to her claim of intentional infliction of emotional distress. We agree with plaintiff and reverse the grant of summary disposition regarding this claim.

The trial court granted summary disposition

under MCR 2.116(C)(7) with respect to this claim. MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law (here, governmental immunity). A motion under MCR 2.116(C)(7) may be supported by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3). If such material is submitted to the court, it must be considered. MCR 2.116(G)(5).

Governmental immunity pursuant to MCL 691.1407; MSA 3.996(107) is an affirmative defense and requires that the defense be stated in the party's responsive pleading. MCR 2.111(F)(3)(a); *Wade v Dep't of Corrections,* 439 Mich 158, 163; 483 NW2d 26 (1992). In order to survive a motion for summary disposition, the plaintiff must allege facts justifying application of an exception to governmental immunity. *Id.*

Plaintiff relies on the following exception to governmental immunity:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each . . . employee of a governmental agency . . . shall be immune from tort liability for injuries to persons or damages to property caused by the . . . employee . . . while in the course of employment or service . . . if all of the following are met:
> (a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(2); MSA 3.996(107)(2).]

Only the third element is at issue here. We believe that summary disposition of this claim is precluded because reasonable jurors could honestly reach different conclusions with regard to whether defendants' conduct amounts to gross negligence. *Vermilya v Dunham,* 195 Mich App 79, 83; 489 NW2d 496 (1992). In the present case, the deputy sheriffs involved placed plaintiff in a holding cell with Marshall. Plaintiff had been a juror on Marshall's case for two weeks and Marshall was charged with five counts of first-degree murder in a highly publicized case in the City of Detroit. Plaintiff was in the holding cell with Marshall on two separate occasions and they were handcuffed together and taken to the Wayne County Jail where they were again placed in the same jail cell. While in the holding cell, plaintiff stated that deputy sheriffs looked inside the window and laughed and pointed at her.

Reasonable minds could differ with regard to whether the actions of the defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury resulted. Thus, plaintiff has presented sufficient evidence, if believed by a rational trier of fact, to show that defendants acted in a grossly negligent manner so that they are not covered by governmental immunity.

Further, plaintiff has presented sufficient evidence to show that the actions of defendants were "a" proximate cause of her injury. *Dedes v Asch,* 446 Mich 99, 118; 521 NW2d 488 (1994). The trial court ruled that the defendants' actions could not be the sole proximate cause of plaintiff's injury because Judge Tennen's action of sentencing plaintiff to jail was a proximate cause of her injury. As plaintiff notes, Judge Tennen's action of sentencing her to three days' imprisonment for contempt

of court is not the issue here. Rather, the question is whether defendants' acts of placing plaintiff in the same cell with Marshall and then laughing at plaintiff were a cause of plaintiff's injury. A reasonable juror could find that the actions of the defendants were a proximate cause of plaintiff's injury where the deputy sheriffs placed plaintiff in the same cell with Marshall and there is testimony that there is a means of separating prisoners if the deputies feel there is a danger from putting certain people together.

Accordingly, plaintiff has presented sufficient evidence to show that the defendants' conduct was grossly negligent and a proximate cause of her injury. Defendants are not entitled to governmental immunity as a matter of law under MCR 2.116(C)(7). The jury will have to determine whether the conduct as alleged by plaintiff is actually grossly negligent and whether the conduct was a proximate cause of plaintiff's injury.

Because plaintiff has presented evidence to show that defendants' conduct constitutes gross negligence, she may maintain her tort claim, which in this case is intentional infliction of emotional distress. Once plaintiff has presented sufficient facts justifying application of the gross negligence exception to governmental immunity, she may then maintain her tort claim. See *Wade, supra,* p 163; *Patterson v Kleiman,* 199 Mich App 191, 192; 500 NW2d 761 (1993), aff'd as modified 447 Mich 429; 526 NW2d 879 (1994).

Thus, we must next consider whether plaintiff has alleged sufficient facts to meet the elements of the tort of intentional infliction of emotional distress.[1] This claim would be decided under MCR

---

[1] Although the trial court dismissed this tort claim on the basis of MCR 2.116(C)(7) only, finding that the claim was barred by govern-

2.116(C)(10). We believe that she has alleged sufficient facts to withstand such a motion.

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Duran v Detroit News, Inc,* 200 Mich App 622, 629-630; 504 NW2d 715 (1993). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Linebaugh v Sheraton Michigan Corp,* 198 Mich App 335, 342; 497 NW2d 585 (1993).

We believe that a rational trier of fact could find that defendants' conduct was so outrageous in character and so extreme in degree that it goes beyond all bounds of common decency in a civilized society. Plaintiff has alleged that she was placed in the same holding cell with Marshall after plaintiff had been a juror on Marshall's case. This case concerned the execution-style deaths of six people in Detroit and was a highly publicized case. Marshall assertedly asked plaintiff questions about the case and badgered and intimidated her. The deputies looked through the window and started laughing. Plaintiff remained in the cell with Marshall for one hour before Marshall was removed. However, the deputies again brought Marshall back to the cell with plaintiff where they remained together again for one hour. They were then handcuffed together and taken to the Wayne County Jail. Plaintiff and Marshall were placed

---

mental immunity, we believe that this argument is properly before us. This argument was raised below and on appeal by plaintiff. All the evidence is before us and such an argument involves review de novo. Thus, this argument is properly before this Court. *Peterman v Dep't of Natural Resources,* 446 Mich 177, 183; 521 NW2d 499 (1994).

together in the same cell with approximately seven other women. After being released from jail, plaintiff had to be hospitalized as a result of a mental breakdown. Further, there is testimony from the deputies that they have a policy of separating prisoners where there is a known possibility of physical harm.

These facts as alleged by plaintiff are sufficient to show extreme and outrageous conduct on behalf of defendants, that they at least acted in a reckless manner, and that defendants' actions caused plaintiff's injury. Thus, a jury will have to determine whether defendants are actually liable for intentional infliction of emotional distress. Accordingly, the trial court's grant of summary disposition with respect to the claim of intentional infliction of emotional distress is reversed.

Affirmed in part, reversed in part, and remanded for further proceedings. Jurisdiction is not retained.

D. C. KOLENDA, J. (concurring). I agree completely with Judge JANSEN's opinion and have signed it without reservation. A jury could easily conclude that locking plaintiff in a cell with a mass murderer and then, in ways that were plainly visible to plaintiff, laughing at her terror, if that happened as claimed by plaintiff, thereby communicating to her that she was at the mercy of a murderer, was behavior that is utterly intolerable in a civilized community. I write separately to respond to the dissent's complaint that there is an inconsistency between that holding and the other holdings in Judge JANSEN's opinion. There is not. Part III of the opinion is based on traditional tort analysis. Parts I and II involve constitutional torts that are unique and involve standards not applicable to common-law torts. Far more needs to be

proved to establish the former. Accordingly, that a set of facts does not prove the former does not mean that it cannot prove the latter.

CAVANAGH, P.J. *(concurring in part and dissenting in part).* I concur in parts I and II of the majority opinion. However, I disagree with the majority's resolution of the issues in part III. I believe that it is inconsistent to conclude that all of plaintiff's other claims, under the same factual situation, were not supportable for purposes of summary disposition, but plaintiff's claims of gross negligence and intentional infliction of emotional distress were.

The majority finds that plaintiff's claim of an Eighth Amendment violation cannot stand because defendants were not deliberately indifferent to a substantial risk of harm to plaintiff. Deliberate indifference arises when a person disregards a risk of harm of which that person is aware. *Farmer v Brennan,* 511 US —; 114 S Ct 1970; 128 L Ed 2d 811, 825-827 (1994). However, the majority also finds, under the same facts, that plaintiff presented sufficient evidence justifying application of the gross negligence exception to governmental immunity. I fail to see how defendants' conduct could be so reckless as to demonstrate a substantial lack of concern for whether an injury resulted (as the majority concludes in its analysis of the latter), and yet not be deliberately indifferent to a substantial risk of harm to plaintiff (as the majority concludes in its analysis of the former).[1]

---

[1] In his concurring opinion, Judge KOLENDA argues that the majority's resolution of these issues is not inconsistent because constitutional torts involve standards not applicable to common-law torts. However, discussions of constitutional torts and common-law torts generally focus on negligence rather than intentional torts. See, e.g., Burnham, *Separating constitutional and common-law torts: A critique and a proposed constitutional theory of duty,* 73 Minn L Rev 515

Moreover, I do not believe that plaintiff has alleged sufficient facts to sustain her claim of intentional infliction of emotional distress. Plaintiff has not shown that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Linebaugh v Sheraton Michigan Corp*, 198 Mich App 335, 342; 497 NW2d 585 (1993). Defendants have a policy of segregating certain prisoners whenever there is a known possibility of harm if other prisoners are placed in the same cell. Plaintiff has presented no evidence that defendants disregarded a known possibility of harm by placing plaintiff in the same cell as Tamara Marshall and later handcuffing the two together. In fact, plaintiff does not allege that Marshall ever attempted to physically assault her. Moreover, plaintiff never informed defendants that she feared for her safety, and the deputies periodically looked into the cell that plaintiff shared with Marshall. Under these facts, I cannot find that defendants' conduct was extreme and outrageous.

Furthermore, I believe that the majority's decision places an unreasonable burden on defendants, who must maintain a jail system with limited facilities and personnel. Under the majority opinion, any prisoner could allege intentional infliction of emotional distress merely for being confined for a time in the same cell with or briefly handcuffed to a person accused of a heinous crime, regardless of the lack of evidence that any physical harm would result or, indeed, that there would be any attempt at physical harm.

(1989); Whitman, *Government responsibility for constitutional torts*, 85 Mich L R 225, 248-254 (1986). In any case, the gross negligence exception to governmental immunity is not a common-law rule but rather a creature of statute.

I dissent with regard to the majority's findings that governmental immunity does not bar plaintiff's claim of intentional infliction of emotional distress and that plaintiff presented sufficient facts to support that claim. I would affirm this case in its entirety.