**John RIDER, Plaintiff,**

v.

**Dale LOUW, Defendant.**

No. 95–73415.

United States District Court,
E.D. Michigan,
Southern Division.

March 13, 1997.

merits, but rather on jurisdictional grounds.

Akiva E. Goldman, Madison Heights, MI, for Plaintiff.

Gary E. Gendernalik, Freeman McKenzie, P.C., Mt. Clemens, MI, for Defendants.

## MEMORANDUM AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

COHN, District Judge.

### I. Introduction

This is a prisoner civil rights case. 42 U.S.C. § 1983. Plaintiff John Rider (Rider) claims that prison guard Dale Louw (Louw), in violation of the Michigan and United States Constitutions, was deliberately indifferent to Rider's safety while he was incarcerated in the Macomb County Jail. Particularly, Rider says that Louw ignored a warning that Rider was going to be attacked by another inmate.

Before the Court is Louw's motion for summary judgment. Louw argues that Rider has failed to demonstrate a genuine issue of material fact about whether Louw was deliberately indifferent to Rider's safety, and that Louw is qualifiedly immune from suit even if a genuine issue exists. For the reasons that follow, the motion is DENIED.

### II. Facts

The following facts are not in dispute.

On November 14, 1993, Rider was serving time in the Macomb County Jail. Louw was a tower officer at the jail. On November 14, 1993, Rider witnessed inmate Paul Robert (Robert) enter a third inmate's cell. It was later discovered that t-shirts had been taken from this cell.

Rider informed the third inmate of Robert's action. Robert found out about this and planned revenge. Another inmate, Richard Devreese (Devreese), overheard the plan to attack Rider. The parties dispute whether Devreese told Louw about the pending attack. *See below* Part IV.

With other inmates acting as look-outs, at around 4:45 p.m. on November 14, 1993, Robert attacked and severely beat Rider. Rider was given medical attention and taken to a hospital, and Robert was immediately moved from the floor. Louw was the tower officer on duty at the time of the attack, and spent his entire shift, from approximately

3:45 p.m. to 8:00 the next morning, in the tower.

### III. The Issue

Rider sued Louw,[1] alleging that Louw knew of Robert's planned attack and asserting that Louw's inaction in the face of a specific and known threat constituted deliberate indifference to Rider's safety under both the Michigan and United States Constitutions. In particular, Rider says that Louw violated his right to be free from cruel and unusual punishment.

### IV. The Factual Dispute

Devreese stated in an affidavit that "about one half hour before the assault on John rider [sic], I called the tower and told the guard that Paul Roberts was going to assault John Rider as soon as they opened the cells." ¶ 3. Devreese stated that he also wrote down on a piece of paper that Roberts was going to attack Rider and gave it to a guard who was just beginning his shift. Devreese stated that "[t]he guard read the note, folded it up and stuck it in his pocket." ¶ 6. Neither Devreese nor Rider can identify directly which guards Devreese contacted. Louw testified in deposition and affirmed in an affidavit that he had no knowledge of the attack until after it occurred. In his affidavit, Louw stated that "[t]o the best of my recollection, at no time on November 14, 1993, was I advised by Richard DeVreese or any other person that Plaintiff was in fear of immediate injury at the hands of other prisoners or that any other prisoner had announced an intent to injure Plaintiff."

### V. Summary Judgment

Summary judgment is granted if the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a·sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.* 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). In so doing, "the court must construe the evidence most strongly in favor of the party opposing the motion." *United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

### VI. Deliberate Indifference

#### A.

A § 1983[2] claimant must show "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Street v. Corrections Corporation of America*, 102 F.3d 810, 814 (6th Cir.1996).

Rider's claim that he was attacked by other inmates implicates the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. Amend. VIII; see *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) ("[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.").[3] The Supreme Court made clear in *Farmer* that "not ... every injury suffered by one prisoner at the hands of

1. The complaint initially named Macomb County, the City of Mount Clemens, two jail administrators, and a corrections officer for the jail. Rider agreed to dismiss Mount Clemens. The Court dismissed Macomb County on November 29, 1995, and the individual defendants on July 24, 1996. In its 1996 dismissal order, the Court also gave Rider permission to amend his complaint to add Louw.

2. "Every person who, under color of any statute, ordinance [or] regulation ... subjects, or causes to be subjected, any citizen of the United States

... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law ... [or] suit in equity." 42 U.S.C. § 1983.

3. Michigan law tracks federal precedent concerning the Eighth Amendment. *Johnson v. Wayne County*, 213 Mich.App. 143, 152, 540 N.W.2d 66 (1995) (citing *York v. Detroit (After Remand)*, 438 Mich. 744, 757, 475 N.W.2d 346 (1991)).

another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. at 1977. The Supreme Court set out two requirements for liability in this situation: 1) "the deprivation alleged must be, objectively, 'sufficiently serious'.... [T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm"[4]; and 2) "a prison official must have a.... state of mind ... of 'deliberate indifference' to inmate health or safety." *Id.* (citations and quotations omitted). The test for a prison official's liability is whether the prison official was " 'deliberate[ly] indifferen[t]' to a substantial risk of serious harm to an inmate." *Id.* at 828, 114 S.Ct. at 1974.

The Supreme Court has found that to act with "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836, 114 S.Ct. at 1978, *quoted in Street,* 102 F.3d at 815. More particularly, the Supreme Court has rejected the so-called civil law definition of recklessness, which looks to whether the risk of harm is "either known or so obvious that it should be known," in favor of the so-called criminal law definition, which "permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware.*" *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1978–79 (emphasis added). The Supreme Court held in *Farmer:* "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...." *Id.* at 837, 114 S.Ct. at 1979.

### B.

To be liable under § 1983, therefore, Louw must have had: 1) actual knowledge, 2) of a substantial risk, 3) that serious harm would befall Rider. *See id.* There are no facts to support an allegation that conditions at the jail, generally, created a "pervasive risk of harm sufficient to put prison officials on notice of imminent harm or danger." *Falls v. Nesbitt,* 966 F.2d 375, 378 (8th Cir.1992)

(finding no liability where there was neither a specific threat nor frequent violence). The only legitimate basis here for liability is the warning Devreese stated he gave the tower officer. The Supreme Court has stated in dictum that liability exists "when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation." *Farmer,* 511 U.S. at 843 n. 8, 114 S.Ct. at 1982 n. 8; *see also, Street,* 102 F.3d at 815 n. 12 ("An Eighth Amendment plaintiff might demonstrate that he was subject to a substantial risk of serious harm because he was subject to a specific risk of harm.").

### 1.

 The first question, and the issue most contested, is whether Louw knew of the pending attack. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact...." *Farmer,* 511 U.S. at 842, 114 S.Ct. at 1981. Rider can survive the motion for summary judgment on this first issue if he can demonstrate a genuine issue of fact concerning whether Devreese warned Louw of the pending attack.

The only evidence Rider presents that Louw knew about the planned attack is Devreese's affidavit. The relevant parts of the affidavit stated that "about one half hour before the assault on John rider [sic], I called the tower ... and told the guard that Paul Roberts was going to assault John Rider," and that "I wrote down on a piece of paper that Paul Roberts was going to assault John Rider ... [and] as the new guard was walking past my cell, I gave him the note." The affidavit is direct evidence that Devreese called the tower officer on duty to tell about the pending attack. "[W]hen the non-moving party presents direct evidence refuting the moving party's motion for summary judgment, the court must accept that evidence as true." *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994).

Louw argues there is no genuine issue about whether he knew that Robert was planning an attack on Rider. The Devreese

---

**4.** The Supreme Court expressly did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." *Id.* at n. 3.

affidavit does not mention Louw by name, nor does it physically describe Louw. Louw states in his affidavit that "[t]o the best of my recollection, at no time on November 14, 1993, was I advised by Richard DeVreese or any other person ... that any other prisoner had announced an intent to injure Plaintiff."

However, Louw's knowledge of the planned attack is "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842, 114 S.Ct. at 1981. Though "the Supreme Court ... [has] authorized an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence," *Adams*, 31 F.3d at 382 (internal citations omitted), the inference that Louw was the officer who received the asserted warning is plausible.

The following facts are undisputed: 1) Louw began his shift as a tower officer at 3:45 p.m. on November 14; 2) after the first couple minutes of the shift, Louw was the only officer working in the tower; and 3) the attack was reported at 4:45 p.m. Devreese stated that he called the tower approximately 30 minutes before the attack. Therefore, Devreese called the tower at approximately 4:15 and would have spoken with Louw, the only officer in the tower to answer the phone.

Louw testified in his deposition that "I can't say beyond doubt that I wasn't [notified of the attack], but I have no recollection of it happening." Louw also testified that his memory of November 14 was based only on the written log and reports of the investigations that occurred after the attack. The following exchange occurred regarding the log:

Q If you're notified by an inmate that there's an assault about to occur, if somebody else is going to be threatened or injured, do you write that down somewhere? Is that logged in writing somewhere?

A .... I don't know if I would log it, but I would call the inmate on the intercom and tell them if he felt his safety was in jeopardy to lock himself down, and I would send the floor officers in to investigate.

"[C]onstru[ing] the evidence most strongly in favor of the party opposing the motion," *Hodges X–Ray*, 759 F.2d at 562, Rider has shown a genuine issue as to whether Louw had actual knowledge of the planned attack.

**2.**

As to the degree of risk, Louw cites *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.1990), for the proposition that "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." (internal quotations omitted). However, the risk known to the guards in *Brown* was only that there was a "racial problem" in the prisoner's cell. Here, the risk allegedly transmitted by Devreese was much more substantial. Devreese stated that he told the tower officer "that Paul Roberts was going to assault John Rider as soon as [the officers] opened the cells." Devreese says he warned the guard about two specific individuals who would be involved in a specific action at a specific time.

In *Street*, 102 F.3d 810, *supra*, the Court of Appeals for the Sixth Circuit reversed an order of summary judgment against an inmate in a case where, among other things, the inmate claimed a guard failed to protect the inmate against another inmate. The guard in *Street* had knowledge that there had been a fight between the plaintiff and another inmate. The other inmate then asked the guard either "what would you do if I kicked [plaintiff's] ass?" or "what would you do if I knock [plaintiff] out?" *Street*, 102 F.3d at 812. The guard took no action to protect the plaintiff or to report the question to a supervisor, and proceeded to open all the cell doors. Plaintiff then was beaten by the other inmate. The Court of Appeals held that "[t]he question [the other inmate] asked [the guard] demonstrates that there are issues of fact as to whether [the guard] was 'aware of facts from which the inference could be drawn that a *substantial risk* of serious harm exist[ed]' and whether he actually 'dr[e]w the inference.'" *Id.* at 816 (emphasis added).

Here, Louw was allegedly told there would be an attack. Though there is no evidence of prior fights between Rider and Robert, Rider

has sufficiently presented a question of fact on whether the risk was substantial.

### 3.

Finally, Louw does not dispute that the harm at issue, physical attack by another inmate, was serious. Rider has sufficiently presented a question of fact on whether the harm to which he was exposed was serious.

For summary judgment purposes, Rider has shown a genuine issue of fact as to whether Louw was " 'deliberate[ly] indifferen[t]' to a substantial risk of serious harm to an inmate." *Farmer,* 511 U.S. at 828, 114 S.Ct. at 1974. Therefore, summary judgment is not appropriate on the grounds that Rider has not alleged a genuine issue of material fact.

### VII. Qualified Immunity

 Louw argues that even if Rider alleged sufficient facts to show a § 1983 violation, Louw is shielded by the doctrine of qualified governmental immunity. Public officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity is a question of law for the Court. *Walton v. City of Southfield,* 995 F.2d 1331, 1335 (6th Cir.1993).

Rider claims Louw knowingly disregarded a substantial risk of serious harm and was therefore deliberately indifferent to Rider's health and safety, in violation of the Eighth Amendment to the United States Constitution. The contours of the right to be free from "cruel and unusual punishments" in this context, as of the time of the events, were sufficiently clear that a reasonable official who ignored a specific threat to a specific inmate would understand that what he was doing violated that right.

In a case involving a claim of deliberate indifference to a prisoner being attacked by another prisoner, *Walker v. Norris,* 917 F.2d 1449 (6th Cir.1990), the Court of Appeals for the Sixth Circuit affirmed a denial of qualified immunity "[b]ecause we recognized such a cause of action long before the conduct underlying this suit occurred." *Id.* at 1453 n. 7 (citing *Stewart v. Love,* 696 F.2d 43 (6th Cir.1982)). Therefore, Louw is not qualifiedly immune from suit, and the motion for summary judgment must be denied on this ground as well.

### VIII. Conclusion

For the reasons stated above, Louw's motion for summary judgment has been denied.

SO ORDERED.