*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0001p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

NED MINGUS,

        *Plaintiff-Appellee,*

    *v.*

SHERILYN BUTLER,

        *Defendant-Appellant.*

No. 08-2286

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-73842—Marianne O. Battani, District Judge.

Submitted: October 13, 2009

Decided and Filed: January 5, 2010

Before: O'CONNOR, Associate Justice;[*] GILMAN and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** John L. Thurber, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Ned Mingus, Jackson, Michigan, pro se.

_____

**OPINION**

_____

    JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Sherilyn Butler appeals the district court's interlocutory orders denying her summary judgment on grounds of qualified immunity from suit under 42 U.S.C. § 1983 and Eleventh Amendment immunity from suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*., and denying her summary judgment on plaintiff-appellee Ned

_____

[*] The Honorable Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

1

Mingus's Fourteenth Amendment equal protection claim.    For the following reasons, we **AFFIRM** in part, **REVERSE** in part, **REMAND** for further proceedings, and **DENY** Mingus's motion for appointment of counsel.

## I.

Mingus is a prisoner confined at the G. Robert Cotton Correctional Facility ("Correctional Facility") in Jackson, Michigan.   Butler, a registered nurse, was the Health Unit Manager at the Correctional Facility in 2002, the relevant year for the allegations underlying this case.

In May 2003, Mingus, who suffers from macular degeneration and other physical infirmities, filed a civil rights complaint against Butler and eight other defendants, alleging violations of the Eighth Amendment, the ADA, and state law.  The complaint was based on the defendants' alleged deliberate indifference to and negligent treatment of Mingus's various medical conditions and denial of his requests for a single-occupancy room with key-operated locks.  The district court, adopting the magistrate judge's Report and Recommendation, granted in part and denied in part the defendants' dispositive motions.   Specifically, it denied Butler qualified immunity on Mingus's Eighth Amendment claim and rejected her sovereign immunity defense to an ADA suit in her official capacity.   Report and Recommendation at 23, *Mingus v. Antonini*, 5:03-cv-60095-MOB-RSW (E.D. Mich. Feb. 22, 2005).   The parties subsequently stipulated to dismissal without prejudice because the complaint contained unexhausted claims.

In October 2005, Mingus filed suit against Butler under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments and under the ADA.  He sought declaratory relief, a prospective injunction requiring the Correctional Facility to provide him with a single-occupancy room, and damages.  The exhibits attached to the complaint document Mingus's medical history, communications with Butler and her subordinates, and his appeals through the administrative process.  On March 2, 2002, Mingus wrote to Butler, notifying her that because he could not see his locks, he was unable to protect his property.  In that letter, he remarked, "I am not helpless, and I see the larger world

well enough to fend for myself. It's the little stuff and things a few feet away I can't see." He complained of other inmates, especially able-bodied ones, receiving single-occupancy rooms when he did not. In her medical notes, one of Butler's subordinates wrote that "inmate doesn't meet criteria for single man cell" and recommended that Mingus receive key-operated locks. In late March 2002, Mingus again wrote to Butler regarding his circumstances, indicating his intent to grieve her decision and clarifying that his "complaint is not just that I can't see my locks, because I'm vulnerable in many other ways." In response, one of Butler's subordinates again wrote in her medical notes, "Correspondence from inmate stating he is upset he cannot have single room. . . . Inmate does not meet criteria for single man room. Discussed this situation with Ms. Butler . . . ." Throughout the administrative grievance process, Mingus continued to assert that he feared that he could not protect himself from other inmates and that their "predation is the direct result of my disability."

On February 21, 2008, Butler moved for summary judgment on all counts of the complaint. She moved on six grounds: (1) Title II of the ADA does not permit suits for damages against a state official in her individual capacity; (2) Title II of the ADA does not permit suits for damages against a state official in her official capacity if they are based on a theory of equal protection; (3) the Eleventh Amendment bars § 1983 suits for damages against a state official in her official capacity; (4) she was entitled to qualified immunity on Mingus's Eighth Amendment theory; (5) Mingus's Fourteenth Amendment claims fail under rational basis review; and (6) Mingus could not make a showing of irreparable harm necessary to warrant injunctive relief because he received his key-operated locks.

Butler supplemented the administrative record of Mingus's grievance with a Prison Policy Directive and "Guidelines" document. The former directed prison health personnel to "identify reasonable options available in a corrections setting" to accommodate a prisoner with a "special medical need." The latter set forth the criteria the prison used in assigning single-occupancy rooms. Specifically, it listed certain medical conditions, such as gender identity disorder, "which *may* require a single person

cell." Although macular degeneration was not listed, the document also allowed that the "Outpatient Mental Health Team may order a single person cell for reasons other than those listed above but consistent with their guidelines."

The magistrate judge recommended dismissal of Mingus's individual capacity ADA claim, official capacity § 1983 claim, and request for injunctive relief regarding the issuance of key-operated locks. However, he permitted the rest of Mingus's claims to proceed. Specifically, he reasoned that Title II of the ADA abrogated state sovereign immunity in official capacity suits under the Supreme Court's holding in *United States v. Georgia*, 546 U.S. 151, 159 (2006). Relying upon the district court's orders in the 2003 lawsuit, he held that Butler was not entitled to qualified immunity because there were disputed issues of material fact regarding the scope of her supervisory authority at the Correctional Facility, her alleged deliberate indifference to Mingus's medical conditions, and her possible awareness of the substantial risks that Mingus's inability to see created for him and his property. The magistrate judge then ruled that Mingus's Fourteenth Amendment claims could proceed because a jury could find that Butler had no rational basis for denying Mingus a single-occupancy room when, according to Mingus's uncontradicted allegation, other similarly disabled prisoners were given such rooms. Finally, he allowed Mingus to pursue injunctive relief regarding his request for a single-occupancy room.

Butler timely objected to the Report and Recommendation and argued that the magistrate judge misconstrued the holding of *Georgia*, incorrectly analyzed qualified immunity, misapplied Fourteenth Amendment rational-basis analysis, and improperly second-guessed the discretionary decisions of prison administrators by allowing Mingus to pursue prospective injunctive relief. On September 19, 2008, the district court rejected all of Butler's objections and adopted the Report and Recommendation in full with emphasis on the importance of *Georgia*. Butler then timely appealed and, before us, Mingus moved for appointment of counsel.

## II.

We address, in turn, Butler's assertions of qualified immunity to Mingus's Eighth Amendment claim and Eleventh Amendment immunity to the ADA claim, her appeal of the district court's denial of summary judgment on the equal protection claim, and Mingus's motion for appointment of counsel.

### A. Qualified Immunity

The district court's denial of a claim of qualified immunity is immediately appealable under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). The Supreme Court has "held that 28 U.S.C. § 1291 [cannot] serve as the basis for appellate jurisdiction for appeals from qualified immunity denials to the extent that those appeals took issue with the district court's determination that there existed a genuine issue of fact for trial." *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). Although the district court found that genuine issues of material fact exist, Butler has conceded the facts in the light most favorable to Mingus and raises a pure issue of law regarding her alleged deliberate indifference to Mingus's needs in violation of the Eighth Amendment. *See Harrison v. Ash*, 539 F.3d 510, 516-17 (6th Cir. 2008) (requiring that, to appeal a denial of qualified immunity, "the defendant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in the light most favorable to the plaintiff's case"). We review *de novo* a district court's denial of summary judgment on qualified immunity grounds "because the determination of whether qualified immunity is applicable to an official's actions is a question of law." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 531 (6th Cir. 2002) (quotation omitted).

Qualified immunity is "an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Whether a defendant is entitled to qualified immunity depends upon whether the plaintiff's constitutional rights were violated and whether those rights were clearly established. *See, e.g.*, *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). This Court may exercise

its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). We conclude that Mingus's constitutional rights were not violated.

In *Farmer v. Brennan*, the Supreme Court remarked that "having stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." 511 U.S. 825, 833 (1994). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). As we have explained, the elements of an Eighth Amendment violation have both objective and subjective components. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). "First, the failure to protect from risk of harm must be objectively sufficiently serious." *Harrison*, 539 F.3d at 518 (internal quotation marks omitted). An inmate must show "the existence of a sufficiently serious medical need." *Id*. (citation and internal quotations omitted). We evaluate the seriousness of an inmate's need using an "obviousness" approach. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). Under this approach, the medical needs must be "obvious even to a layperson." *Id*.

We have applied the first prong of the Eighth Amendment test in varied contexts. *See, e.g.*, *Gibson v. Moskowitz*, 523 F.3d 657, 661-62 (6th Cir. 2008) (finding the dehydration of an inmate who died after being confined in a 90-plus degree observation room to be an objectively serious medical condition); *Blackmore*, 390 F.3d at 899-900 (finding that the rapid onset of sharp and severe abdominal pain that was eventually revealed to be caused by appendicitis evinced an obvious, substantial risk of serious harm); *Weeks v. Chaboudy*, 984 F.2d 185, 187 (6th Cir. 1993) (finding an Eighth Amendment violation where a doctor did not admit a paralyzed inmate to the prison infirmary); *Hamilton v. Eleby*, No. 08-4499, 2009 U.S. App. LEXIS 18020, at *7 (6th

Cir. Aug. 12, 2009) (holding that an inmate faced an objectively serious risk of harm when the record showed that he was receiving threatening letters from and had been previously assaulted by a prison gang).

Second, the inmate must demonstrate that the official acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. Under this subjective standard, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Thus, the inmate "must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Even though an official need not have acted "for the very purpose of causing harm or with knowledge that harm will result[,] . . . deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 835-36; *see also Gibson*, 523 F.3d at 663 ("The question, however, is not just whether the state employee has admitted the inmate faced an excessive and imminent health risk; it is also whether circumstantial evidence, including the very fact that the risk was obvious, shows the employee must have understood the nature of the risk." (citation and internal quotation marks omitted)).

Butler contends that she is entitled to qualified immunity on Mingus's Eighth Amendment claim for two reasons. First, she argues that Mingus's injury–having his property stolen by other inmates–is not sufficiently serious to satisfy the first prong of the Eighth Amendment test. Second, she argues that she was not deliberately indifferent to the risks Mingus faced from other prisoners because Mingus has, at best, shown only a difference of opinion over whether he was entitled to a single-occupancy room. The undisputed facts reveal that Mingus notified Butler of his fear that his ailments made him "more likely to be preyed upon by other prisoners" because his inability to use his combination locks forced him to leave his property unlocked and unprotected. He informed her of the theft of his property and the risks posed to him by other inmates who

saw him as vulnerable.  Thus, as the district court noted, Mingus did not allege that he was denied medical treatment but, rather, that Butler failed to protect him from the risks resulting from his deteriorating eyesight and other physical ailments.

Even if we assume, without deciding, that Mingus faced an objectively serious risk of harm, Butler was not deliberately indifferent to that risk.  In deciding whether to grant Mingus a single-occupancy room, Butler or her subordinates considered Mingus's health care request and the prison's Guidelines, and concluded that the "inmate does not meet the criteria for single man cell."  The Guidelines document, which Mingus has not disputed, lists only two "medical conditions" and a category of "psychological conditions which may require a single person cell."  The concluding catch-all clause, providing that the "Outpatient Mental Health Team may order a single person cell for reasons other than those listed above but consistent with their guidelines," has no bearing.  While it is possible that Butler did not read this last provision with enough breadth to cover Mingus's request, her decision does not evince "deliberate indifference" to Mingus's plight.  At worst, Butler was negligent and this Court has held that "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, [she] has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

Butler's decision was based on her understanding of the prison policies specified in the Guidelines and did not evince "deliberate indifference" to the risks Mingus faced from other prisoners.  We therefore reverse the district court's denial of summary judgment on Mingus's Eighth Amendment claim.

**B. Eleventh Amendment Immunity**

As with qualified immunity, the district court's denial of a claim of sovereign immunity by a state or state entity is immediately appealable under the collateral order doctrine.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993).  Whether Eleventh Amendment sovereign immunity exists in any particular case

is a question of constitutional law that we review *de novo. Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (*en banc*).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In addition to the states themselves, Eleventh Amendment immunity can also extend to departments and agencies of states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). To determine whether a state department or agency can receive Eleventh Amendment immunity, the primary issue is whether the state itself would be liable for money damages should the entity be found liable. *Brotherton v. Cleveland*, 173 F.3d 552, 560-61 (6th Cir. 1999). Courts also look to other factors such as how state law defines the entity and the degree of control the state exercises over the entity. *Id.* at 561 n.5.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to both federal and state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). It is undisputed that since Butler has been sued in her official capacity, Mingus's ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest. *See, e.g.*, *Brotherton*, 173 F.3d at 560-61.

In the district court, Butler argued that the Eleventh Amendment barred Mingus's ADA claim because it was based upon a theory of equal protection. To support her argument, Butler relied on *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808, 811 (6th Cir. 2002) ("[T]he plaintiff's action is barred by the Eleventh Amendment in so far as the action relies on congressional enforcement of the Equal Protection Clause, but it is not barred in so far as it relies on congressional enforcement of the Due Process Clause."). The district court held that *United States v. Georgia*, 546

U.S. 151 (2006), abrogated *Popovich* and denied Butler immunity. *Mingus v. Butler*, No. 05-73842, 2008 U.S. Dist. LEXIS 73099, at *2-3 (E.D. Mich. Sept. 19, 2008).

In *Georgia*, an inmate alleged that certain conduct by prison officials independently violated his Eighth Amendment rights and Title II of the ADA. 546 U.S. at 157. Without deciding the accuracy of those allegations, the Court explained that the inmate's "claims for money damages against the State under Title II were evidently based . . . on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment" because the guarantee against cruel and unusual punishment has been incorporated into the Due Process Clause of the Fourteenth Amendment. *Id*. As such, the plaintiff in *Georgia* "differ[ed] from the claimants in our other cases addressing Congress's ability to abrogate [state] sovereign immunity . . . ." *Id*. (citing *Tennessee v. Lane*, 541 U.S. 509, 543 n.4 (2004) and *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 362 (2001)). Thus, the Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id*. at 159.

To guide the lower courts in assessing an Eleventh Amendment defense to a suit under Title II, the Supreme Court set forth a three-part test:

> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* In this case, though the district court cited to *Georgia*, it did not apply the required three-part test. *See Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 847 (6th Cir. 2009) (describing the *Georgia* procedure as "mandated").

For purposes of her motion for summary judgment, Butler has not argued that Mingus failed to state a claim for relief under Title II. Thus, she has conceded, for the purposes of this appeal, that the facts would show a violation of Title II of the ADA. Also, the district court found that there exists a genuine issue of material fact with

respect to the rational basis for Butler's actions and, as explained below, we lack jurisdiction to consider Butler's appeal of that determination.  At this stage in the litigation, Mingus has alleged misconduct that *actually* violated the Fourteenth Amendment–namely, treatment unequal to that received by other disabled inmates. What remains is the third prong of the *Georgia* test.

A review of the complaint reveals that Mingus has alleged that the same misconduct by Butler violated the Fourteenth Amendment and the ADA independently. Regarding the former, he alleged that "there is no rational basis for the classification allowing able bodied prisoners, and those with medical problems less serious than Plaintiff's, as qualifying for a single-occupancy room."  As to the ADA, he claimed that he was being "discriminated against as a result of [his] disability, where other prisoners with different disabilities, or no disabilities at all, are provided with single-occupancy rooms."  In both instances, the gravamen of his complaint is that he was treated differently than similarly situated prisoners or prisoners with fewer, or less serious, disabilities with no rational basis underlying the disparate treatment.  Thus, Mingus has alleged misconduct that independently violated both Title II of the ADA *and* the Fourteenth Amendment.  *Georgia*, 546 U.S. at 159.

Butler's reliance upon *Popovich* is misplaced.  In that case, the plaintiff brought a Title II action against a state court for allegedly failing to provide him with hearing assistance in his child custody case.  *Popovich*, 276 F.3d at 811.  This Court described the suit as "an equal protection-type claim of discrimination [and] a due process-type claim of unreasonable exclusion from participation in the custody proceeding."  *Id*. Relying upon *Garrett*, in which the Supreme Court held that the Eleventh Amendment barred federal employment discrimination suits against a state based on disability under Title I of the ADA because "disability" is not a "suspect category" that deserves "heightened scrutiny," the *Popovich* court held that the "the plaintiff's action is barred by the Eleventh Amendment in so far as the action relies on congressional enforcement of the Equal Protection Clause."  *Id*. at 811-12 (citing *Garrett*, 531 U.S. at 356).

In this case, however, Mingus does not claim to deserve heightened scrutiny as a member of a suspect class but instead challenges the rational basis for Butler's actions. Butler has conceded that Mingus has stated a claim for relief under Title II of the ADA and, in the district court, did not point to facts in the record showing her rational basis for denying him a single-occupancy room, the conduct underlying both the ADA and Fourteenth Amendment claims. Thus, he has made a traditional equal protection claim and not an "equal protection-type claim of discrimination," *Popovich*, 276 F.3d at 811.

Because Mingus has alleged conduct that violates the ADA and the Fourteenth Amendment independently, the third prong of *Georgia* requires that we not determine whether sovereign immunity is at issue. Thus, we have no occasion to elaborate further on the relationship between *Georgia* and *Popovich*, and affirm the district court, albeit on different grounds.

### C. Fourteenth Amendment

Finding that Butler had offered no rational explanation for her decision to deny Mingus a single-occupancy room, the district court denied her summary judgment on Mingus's Fourteenth Amendment claim. For the first time on appeal, Butler contends that she is entitled to qualified immunity. Butler asserted qualified immunity in her answer to the complaint but did not present it to the district court in seeking summary judgment. Instead, she merely asserted that she and Mingus had a difference of opinion on whether he was entitled to a single-occupancy room. Thus, we will adhere "to the general rule that '[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court.'" *Jones v. Caruso*, 569 F.3d 258, 266 (6th Cir. 2009) (alteration in original, citation omitted). Because qualified immunity is not properly before us, we lack jurisdiction to consider Butler's appeal of the district court's denial of summary judgment. *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008) ("The denial of a summary judgment motion usually presents neither a final appealable order nor an appealable interlocutory order."). Accordingly, we affirm the district court.

**D. Appointment of Counsel**

Finally, we deny Mingus's motion for appointment of counsel pursuant to 6th Cir. R. 34(j)(2)(C). Although the issues raised by this appeal are complex, we find that Mingus has more than adequately represented himself.

## III.

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, **REMAND** for further proceedings, and **DENY** Mingus's motion for appointment of counsel.