*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOE RICHARDSON, JR.,

Plaintiff-Appellant,

v

OAKLAND COUNTY ANIMAL SHELTER,
OAKLAND COUNTY SHERIFF'S OFFICE, ALAN
SLADE, and SHELLEY GREY,

Defendants-Appellees,

and

JOHN DOES 1-5,

Defendants.

UNPUBLISHED
September 10, 2020

No. 348289
Oakland Circuit Court
LC No. 2018-169670-NO

Before: MARKEY, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition for defendants[1] pursuant to MCR 2.116(C)(7) and (C)(8) in this action arising from a dog attack at an animal shelter. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We affirm.

## I. UNDERLYING FACTS

Plaintiff, an inmate at the Oakland County Jail (OCJ), was deemed eligible to participate in a voluntary program that allowed inmates to volunteer for work duty outside the OCJ. As part of this program plaintiff worked in the Oakland County Animal Shelter (OCAS) cleaning dog

---

[1] As used in this opinion the term "defendants" refers to the Oakland County Animal Shelter, the Oakland County Jail, Alan Slade, and Shelley Grey.

-1-

kennels. On November 14, 2017, plaintiff and another inmate worker were attacked by a dog in the shelter. In November 2018, plaintiff brought this lawsuit against the OCAS, the Oakland County Sheriff's Office (the Sheriff's Office), Sheriff's Deputy Alan Slade, OCAS Supervisor Shelley Grey, and five unidentified "John Doe" defendants, asserting statutory and common-law claims, and a claim for damages under 42 USC 1983 for violation of constitutional rights under color of state law. Defendants, in lieu of filing an answer, moved for summary disposition under MCR 2.116(C)(7) and (8). Although Oakland County (the County) was not named as a defendant, it made an appearance on the basis that OCAS and the Sheriff's Office were divisions of the County and that the County was the proper defendant for plaintiff's § 1983 claim. Defendants argued that they were entitled to summary disposition under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, and Slade and Grey were entitled to qualified immunity under § 1983. OCAS and the Sheriff's Office argued that they were not entities subject to liability under § 1983. Plaintiff moved to amend his complaint to substitute the County as a defendant for OCAS and the Sheriff's Office. The trial court granted summary disposition for defendants and denied plaintiff's motion to amend. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's summary disposition ruling is reviewed de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008).

> A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence . . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

Furthermore,

> [w]e must consider the documentary evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. But when a relevant factual dispute does exist, summary disposition is not appropriate. [*Moraccini v City of Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012) (citations and quotation marks omitted).]

MCR 2.116(C)(8) mandates summary disposition if "[t]he opposing party has failed to state a claim on which relief can be granted." *Harbor Watch Condo Ass'n v Emmet Co Treasurer*, 308 Mich App 380, 384; 863 NW2d 745 (2014).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed

-2-

in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden*, 461 Mich at 119-120 (quotation marks and citations omitted).]

Thus, "[a] party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010). "Conclusory statements, unsupported by factual allegations, are insufficient to state a cause of action." *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 272; 671 NW2d 125 (2003). Finally, because a motion under MCR 2.116(C)(8) is based on the pleadings, discovery is not a consideration when a court determines whether to grant the motion. See *Maiden*, 461 Mich at 119-120.

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "Statutory provisions must be read in the context of the entire act, giving every word its plain and ordinary meaning. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). Finally, "[i]ssues of constitutional law are reviewed de novo." *In re Carey*, 241 Mich App 222, 226; 615 NW2d 742 (2000).

## III. DISCOVERY

Plaintiff argues that the trial court prematurely granted summary disposition before plaintiff had the opportunity to conduct discovery. We disagree.

"A plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity. Placing this burden on the plaintiff relieves the government of the expense of discovery and trial in many cases." *Odom v Wayne Co*, 482 Mich 459, 478-479; 760 NW2d 217 (2008). Although summary disposition is generally premature if it is granted before discovery on a disputed issue is complete, "a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). "A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure." MCR 2.116(H)(1). Such an affidavit must name the other persons and state "the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts." MCR 2.116(H)(1)(a) and (b). "Mere conjecture does not entitle a party to discovery, because such discovery would be no more than a fishing expedition." *Davis v City of Detroit*, 269 Mich App 376, 380; 711 NW2d 462 (2005). A party opposing summary disposition on the basis that summary disposition is premature "must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Marilyn Froling Revocable Living*, 283 Mich App at 292-293.

Plaintiff complains that defendants were permitted to present arguments based on the voluntary nature of plaintiff's OCAS work and statements that plaintiff made in recorded phone calls from jail. Plaintiff argues that further discovery could provide a different context and interpretation of his statements. As discussed in greater detail below, plaintiff has personal knowledge of the attack, defendants' response to the attack, his work arrangement, and his statements in the phone calls. Plaintiff could have submitted his own affidavit pursuant to MCR 2.116(G)(2) to dispute defendants' factual assertions and documents regarding these matters. But the only affidavit plaintiff submitted merely restated the allegations in his complaint that defendants did not provide him with safety equipment or train him to handle dangerous dogs. Plaintiff argues that he requires discovery to obtain relevant information under defendant's control, but he failed to submit an affidavit regarding the nature of this information as required by MCR 2.116(H). Consequently, plaintiff has not established that summary disposition was premature.

## IV. PUBLIC-BUILDING EXCEPTION

Plaintiff argues that the trial court erred by dismissing his claim for recovery under the public-building exception to governmental immunity. We disagree.

Under the GTLA, a governmental entity is immune from tort liability if it "is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). While a governmental employee may be held liable for gross negligence under certain circumstances, a governmental entity maintains its immunity "when engaged in the exercise or discharge of a governmental function unless the plaintiff establishes the existence of a statutorily created exception to that immunity." *Odom*, 482 Mich at 478 (citation and quotations omitted). The public-building exception, MCL 691.1406, provides an exception for "bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition." In *Renny v Dep't of Transp*, 478 Mich 490, 495-496; 734 NW2d 518 (2007), our Supreme Court stated the five elements a plaintiff must prove to avoid governmental immunity under the public-building exception:

> (1) a governmental agency is involved, (2) the public building in question is open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable amount of time.

Preliminarily, defendants argue that to the extent that the public-building exception even applies, plaintiff failed to satisfy the statutory requirement that he provide notice of the injury and the defect.[2] "Consistently with the fact that the government may voluntarily subject itself to liability, it may also place conditions or limitations on the liability imposed." *Pike v Northern*

---

[2] The public-building exception is the only exception to governmental immunity under the GTLA that plaintiff argues applies in this case.

*Mich Univ*, 327 Mich App 683, 691; 935 NW2d 86 (2019) (quotation marks and citation omitted). The public-building exception imposes a statutory notice requirement as a condition of any recovery. MCL 691.1406 provides, in pertinent part:

> As a condition to any recovery for injuries sustained by reason of any dangerous or defective public building, the injured person, within 120 days from the time the injury occurred, shall serve a notice on the responsible governmental agency of the occurrence of the injury and the defect. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.

This language is clear and unambiguous, and, therefore, must be enforced as written. *Driver*, 490 Mich at 246-247. Consequently, failure to provide the required notice within 120 days of an injury is fatal to a claim under the public-building exception, warranting dismissal of the claim under MCR 2.116(C)(7). *Pike*, 327 Mich App at 693-694. Plaintiff failed to comply with this condition. Thus, to the extent that the public-building exception even applies in this case, plaintiff is not entitled to recovery under that exception. Indeed, plaintiff does not even address his failure to provide the required notice. He merely suggests that if he were permitted to conduct discovery, he could acquire information about defects in the caging and doorways at the shelter that made the dog attack possible. But MCL 691.1406 required plaintiff to notify defendants within 120 days of his injury. He failed to do so. Instead, plaintiff filed his complaint more than 11 months after his injury, well beyond the statutory 120-day period. Accordingly, dismissal of plaintiff's public-building claim was warranted on this basis alone.

## V. STATE-CREATED DANGER DOCTRINE

Plaintiff argues that the trial court erred by dismissing his claim for his procedural mistake of naming the wrong defendants instead of allowing him to amend his complaint to name the County as a defendant and to plead a claim premised on a "state-created danger." We disagree.

Plaintiff's state-created danger argument pertains to his § 1983 claims against OCAS and the Sheriff's Office, which plaintiff concedes should have been brought against the County. "When a trial court grants summary disposition pursuant to MCR 2.116(C)(8), or (C)(10), the opportunity for the nonprevailing party to amend its pleadings pursuant to MCR 2.118 should be freely granted, unless the amendment would not be justified." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004), citing MCR 2.116(I)(5). "An amendment, however, would not be justified if it would be futile." *Id*. The merits of plaintiff's § 1983 claims and the application of the "state-created danger" rule therefore are at issue, in order to analyze whether amendment would be futile.

"Any person who, under color of state law, deprives another of rights protected by the constitution or laws of the United States is liable under 42 USC 1983." *Morden v Grand Traverse Co*, 275 Mich App 325, 332; 738 NW2d 278 (2007). "Section 1983 itself is not the source of substantive rights; it merely provides a remedy for the violation of rights guaranteed by the federal constitution or federal statutes." *York v Detroit*, 438 Mich 744, 757-758; 475 NW2d 346 (1991). A division or department of a county or city is not an entity which may be sued under § 1983. *Matthews v Jones*, 35 F3d 1046, 1049 (CA 6, 1994); *Castillo v Cook Co Mail Room Dep't*, 990

F2d 304, 307 (CA 7, 1993). "Establishing municipal liability under 42 USC 1983 requires proof that: (1) a plaintiff's federal constitutional or statutory rights were violated and (2) the violation was caused by a policy or custom of the municipality." *Johnson v Vanderkooi*, 502 Mich 751, 762; 918 NW2d 785 (2018). "A constitutional violation is attributable to a municipality if 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.' " *Id.*, quoting *Monell v Dep't of Social Servs of the City of New York*, 436 US 658, 690; 98 S Ct 2018; 56 L Ed 2d 611 (1978). Alternatively, "[l]iability may also be based on a governmental custom even though such a custom has not received formal approval through the body's official decisionmaking [sic] channels if the relevant practice is so widespread as to have the force of law." *Johnson*, 502 Mich at 762 (quotation marks and citation omitted). But "liability may not be based on a respondeat superior theory." *Id.* at 762-763.

Plaintiff relies on the state-created danger doctrine to show that the County's actions constitute a violation of his due-process rights and right against cruel and unusual punishment. In general, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v Winnebago Co Dep't of Social Servs*, 489 US 189, 195; 109 S Ct 998; 103 L Ed 2d 249 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* As explained by this Court in *Mays v Snyder*, 323 Mich App 1, 76; 916 NW2d 227 (2018), aff'd ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 157335-7). the state-created danger doctrine applies to "instances in which an individual in the physical custody of the state, by incarceration or institutionalization or some similar restraint of liberty, suffers harm from third-party violence resulting from an affirmative action of the state to create or make the individual more vulnerable to a danger of violence." The *Mays* Court then adopted the three-part state-created danger test established by the Sixth Circuit in *Cartwright v Marine City*, 336 F3d 487, 493 (CA 6, 2003):

> To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff. [*Mays*, 323 Mich App at 77, quoting *Cartwright*, 336 F3d at 493.]

For the purposes of determining whether a state-created danger exists, a failure to act is not "an affirmative act." *Cartwright*, 336 F3d at 493. Consequently, a failure to act does not create a state-created danger. See *id.*

The "third party" that caused plaintiff's injuries was a dog. Assuming that a dog attack, rather than an act of violence by a human actor not acting on behalf of a state could give rise to a claim under the state-created danger rule, plaintiff fails to establish the requirements set forth in *Cartwright*. Defendants and the County did not affirmatively create or increase the risk of a dog attack merely by accepting plaintiff's services in the shelter. Additionally, plaintiff does not allege any affirmative act by defendants. He alleges only omissions: failure to warn him of the danger of dogs, failure to provide and require protective equipment, and failure to timely provide medical

assistance. There was no special danger to plaintiff as distinct from the public at large. Any shelter employee or interested member of the public would face the same risk. Indeed, it is clear from the security video that the shelter employees had difficulty subduing the dog. Finally, plaintiff has failed to show any special risk specific to himself, nor has he shown that shelter employees had knowledge of any such risk. Plaintiff faced only a general risk, that would have been the same for any other person dealing with the dog.

Plaintiff's § 1983 claim against the County also fails in other respects, most significantly in its reliance on alleged omissions by County employees and not on a policy or custom attributable to the County. "A constitutional violation is attributable to a municipality if 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Johnson*, 502 Mich at 762, quoting *Monell*, 436 US at 658. Plaintiff states that he cannot know without conducting discovery what policies or decisions the County has that violate constitutional rights. As discussed earlier, however, plaintiff failed to submit an affidavit of unavailable evidence as required by MCR 2.116(H). Furthermore, the nature of the incident by itself does not permit the inference of any policy that violated plaintiff's constitutional rights. Handling dogs, especially aggressive breeds, is an inherently risky activity. Plaintiff cannot establish that the County has a policy of exposing inmates to the dangers of openly risky activity by simply allowing inmates to volunteer for the activity. Defendants' alleged delay in providing medical treatment also does not permit an inference of a policy interfering with inmates' right to medical treatment. The submitted evidence established that plaintiff received a series of interventions ranging from first aid at the OCAS, treatment from a nurse at the jail clinic, and, finally, treatment at a hospital emergency room. Even if these were not the best choices, they do not reflect a policy, pattern, or practice of denying inmates necessary medical attention. Consequently, amendment of the complaint to bring a state-created danger claim against the County would have been futile.

Plaintiff also argues that the County violated his Eighth Amendment right against cruel and unusual punishment. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment. US Const, Am VIII; *Morden*, 275 Mich App at 332. "Cruel and unusual punishment prohibited by the Eighth Amendment may include the denial of medical or psychological treatment." *Morden*, 275 Mich App at 332. The Eighth Amendment is violated when a prison official is deliberately indifferent to a substantial risk of harm to an inmate. *Johnson v Wayne Co*, 213 Mich App 143, 152; 540 NW2d 66 (1995). "Deliberate indifference requires a showing that the official was subjectively aware of the risk." *Id.* "The protection afforded by the Eighth Amendment is the protection from inherently barbaric punishments under all circumstances." *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013) (citation and quotation marks omitted). "[C]onditions of confinement" constitute cruel and unusual punishment if they "resulted in unquestioned and serious deprivation of basic human needs." *Rhodes v Chapman*, 452 US 337, 347; 101 S Ct 2392; 69 L Ed 2d 59 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v Wilson*, 832 F2d 950, 954 (CA 6, 1987). A prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and therefore violates the Eighth Amendment. *Morden*, 275 Mich App at 333. But "[a] state actor's failure to alleviate a significant risk that he should have perceived but did not does not rise to the level of deliberate indifference." *Mays*, 323 Mich

App at 61 (citation and quotation marks omitted). "To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the complainant's health or safety." *Id.* (citations, quotation marks, and brackets omitted). Finally, with respect to the County, plaintiff must base his claim not on a state actor's act or omission, but instead on a "policy or custom" implemented by the County. *Johnson*, 502 Mich at 762.

There is no evidence that the County, the Sheriff's Office, or OCAS had any sort of policy or custom to expose inmate workers to an unreasonable risk of injury while working in the OCAS. Inmates were not assigned to work in the shelter unless they requested the assignment. Similarly, inmates were not required to interact with a dog if they felt uncomfortable with it. The attack on plaintiff and the other inmate involved a random, isolated incident that could have happened to any shelter employee. Plaintiff also failed to demonstrate that defendants showed deliberate indifference to his injuries, providing the medical treatment already noted. Even if defendants were negligent by failing to immediately call for an ambulance, that negligence does not rise to the level of deliberate indifference to his medical needs when he received first aid at the shelter and treatment at the OCJ clinic before he was taken to the emergency room. Moreover, there is no evidence of a policy interfering with inmates' right to medical attention.

Accordingly, the trial court properly granted summary disposition for OCAS and the Sheriff's Office not only because they were the wrong defendants, but also because plaintiff's complaint failed to plead a valid § 1983 claim even if he had named the correct entity. Plaintiff's proposed amended complaint did not cure these deficiencies because it simply would have added the County as a defendant. Because amending the complaint to name the County as a defendant would have been futile, the trial court did not abuse its discretion by denying plaintiff's motion to amend. See *Ormsby*, 471 Mich at 53.

## VI. INDIVIDUAL DEFENDANTS

Plaintiff argues that the trial court erred by concluding that Sheriff's Deputy Slade and OCAS Supervisor Grey were immune from liability for his claims. We disagree.

### A. TORT LIABILITY FOR STATE CLAIMS

Plaintiff brought a claim for liability under the dog-bite statute, MCL 287.351(1), which provides:

> If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.

This statute "imposes almost absolute liability on the dog owner, except when the dog bites after being provoked," unless the plaintiff was not on public property or lawfully on private property. *Kelsey v Lint*, 322 Mich App 364, 370; 912 NW2d 862 (2017) (citation and quotation marks omitted). Plaintiff also alleged a common-law claim for his dog-bite injuries. A common-law dog-bite claim is based on negligence and "arises when there is ineffective control of an animal in

a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence." *Id.* at 377 (citation omitted). "To make a prima facie showing of negligence, a plaintiff need only establish that the defendant failed to exercise ordinary care under the circumstances to control or restrain the animal." *Kelsey*, 322 Mich App at 377-378 (citation and quotation marks omitted).

Under MCL 691.1407(2), "[g]overnmental employees are immune from liability for injuries they cause during the course of their employment if they are acting or reasonably believe they are acting within the scope of their authority, if they are engaged in the exercise or discharge of a governmental function, and if their conduct does not amount to gross negligence that is the proximate cause of the injury or damage." *Love v Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006). "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden*, 461 Mich at 122. "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "The GTLA unambiguously grants immunity from *all* tort liability, i.e., all civil wrongs for which legal responsibility is recognized, regardless of how the legal responsibility is determined, except as otherwise provided in the GTLA." *Tate v City of Grand Rapids*, 256 Mich App 656, 660; 671 NW2d 84 (2003). This immunity extends to liability for dog bites under the strict liability standard of MCL 287.351. *Tate*, 256 Mich App at 660-661.

As explained by this Court in *Tarlea v Crabtree*, 263 Mich App 80, 83; 687 NW2d 333 (2004),

> "[F]or a plaintiff to be successful in a tort action against a governmental employee, the plaintiff must prove both that (1) the governmental employee's conduct demonstrated a substantial lack of concern for whether his conduct would cause injury to the plaintiff, and (2) the alleged misconduct was *the* proximate cause of the plaintiff's injury."

"Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id.* at 90. "[S]aying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Id.* In *Tarlea*, this Court stated:

> Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.
>
> The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Id.*]

Plaintiff's allegations fail to rise to the level of gross negligence. Plaintiff alleged only that a pit bull attacked him without provocation, that personnel did not respond to the attack for several minutes, and that defendants failed to provide protective gear. These allegations are insufficient to establish gross negligence. Moreover, the video recording of the incident shows that plaintiff went for help at 2:26:24, and that employees came to rescue the other inmate at 2:28:18, approximately two minutes later. There is no evidence or allegation that defendants did anything other than fail to act proactively to protect plaintiff by providing training and equipment. Consequently, there is no basis for inferring that defendants willfully disregarded plaintiff's safety.

Plaintiff also fails to demonstrate that defendants were grossly negligent by delaying medical care. First aid was administered immediately after the attack and then a nurse at the OCJ further treated plaintiff for his injuries. At most, defendants underestimated plaintiff's need for treatment by taking him to the OCJ before taking him to a hospital emergency room. This delay or misjudgment does not arise to the level of willful disregard of plaintiff's well-being.

Finally, plaintiff's argument that he should be permitted to conduct discovery is unpersuasive. Plaintiff experienced the incident and he has not offered any alternate interpretation of the video. Plaintiff was also a party to his own recorded jail calls. He could have submitted his own affidavit to dispute or explain any events depicted in the video and heard on his recorded jail calls. Defendants did not offer any evidence of matters that were unknown to plaintiff, and, as explained earlier, plaintiff did not submit any affidavit pursuant to MCR 2.116(H) of facts he intended to establish in discovery.

In sum, the trial court properly dismissed plaintiff's dog-bite claims against the individual defendants for failure to plead or show that defendants' conduct could be considered grossly negligent. Thus, it is unnecessary to address the issue of proximate causation.

### B. PLAINTIFF'S § 1983 CLAIMS

Qualified immunity is a recognized defense against claims for damages under § 1983 for alleged violations of federal rights. *Morden*, 275 Mich App at 340. "Qualified immunity is a question of law for the court." *Id*. "An official has qualified immunity from suits under 42 USC 1983 when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Holeton v City of Livonia*, 328 Mich App 88, 102; 935 NW2d 601 (2019) (citation and quotation marks omitted). " 'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*, quoting *Pearson v Callahan*, 555 US 223, 231; 129 S Ct 808; 172 L Ed 2d 565 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 US at 231 (citation and quotation marks omitted). The doctrine of qualified immunity "applies an objective standard to the conduct of defendants, not to their state of mind." *Morden*, 275 Mich App at 340.

To overcome qualified immunity, the court must find that the plaintiff can establish two elements:

First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. [*Holeton*, 328 Mich App at 102, quoting *Pearson*, 555 US at 232.]

The court "must concentrate at the outset on the definition of the constitutional right and [then] determine whether, on the facts alleged, a constitutional violation could be found. . . ." *Solomon v Auburn Hills Police Dep't*, 389 F3d 167, 172-173 (CA 6, 2004) (quotation marks and citation omitted; alterations in original). Consequently, "[t]he focus of the inquiry is on whether the official had fair notice that her conduct was unlawful, and, for that reason, the reasonableness of the act must be judged against the backdrop of the law at the time of the conduct." *Holeton*, 328 Mich App at 102-103 (citation and quotation marks omitted).

Finally, a governmental employee's "conduct violates the Due Process Clause only if it is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Jane Doe v Jackson Local Sch Dist Bd of Ed*, 954 F3d 925, 933 (CA 6, 2020) (citation and quotation marks omitted). In the "spectrum of culpability," the *Doe* Court held, "negligent conduct will never shock society's conscience," but "conduct unjustifiably intended to injure is the most likely to rise to the conscience-shocking level." *Id.* (citation and quotation marks omitted).

Applying these standards to plaintiff's claim, the individual defendants' alleged negligence in preventing the dog attack falls far short of the culpability necessary to "shock society's conscience." The dog attack was random and spontaneous; and it was not instigated or encouraged by any individual defendant. There is no allegation or evidence that defendants were unreasonable in failing to prevent the attack. Accordingly, there was no due-process violation. Because plaintiff's due process rights were clearly not violated we need not consider whether the right he alleges was violated was clearly established. See *Mingus v Butler*, 591 F3d 474, 479 (CA 6, 2010) (granting courts discretion to decide which of two issues in the qualified immunity analysis, the violation of a constitution right and whether the constitutional right in question was clearly established, to analyze first).

In order for a prisoner to prevail on an Eighth Amendment claim, he or she must show that he or she faced a sufficiently serious risk to his or her health or safety and that the defendant official acted with "deliberate indifference to [the prisoner's] health or safety." *Id.* (citation and quotation marks omitted). Neither the facts as alleged by plaintiff nor the submitted evidence support this claim. There is no evidence establishing that the dog attack was anything other than a random and spontaneous incident. Defendants' administered first aid to plaintiff immediately after the attack and then brought him to a nurse and subsequently to the hospital for further treatment. Such conduct clearly did not establish deliberate indifference to plaintiff's safety. Thus, plaintiff's Eighth Amendment claim against the individual defendants also fails. See *id*.

## VII. PUBLIC-DUTY EXCEPTION

Plaintiff argues that the trial court erred by failing to interpret Michigan's governmental immunity statutes consistently with the interpretation of immunity statutes in other states to impose a duty on defendants to protect the public from dangerous animals. We disagree.

-11-

The scope of governmental immunity in Michigan is governed by the GTLA. "Except as otherwise provided, the GTLA broadly shields and grants immunity to governmental agencies from tort liability when an agency is engaged in the exercise or discharge of a governmental function." *Snead v John Carlo, Inc*, 294 Mich App 343, 355; 813 NW2d 294 (2011). "A governmental agency is potentially liable under the GTLA only if the case against it falls into one of these enumerated statutory exceptions to governmental immunity." *Id*. at 357 (footnote omitted). "[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000).

There is no statutory exception to governmental immunity pertaining to dangerous animals in the possession of a governmental agency. However reasonable or beneficial such an exception might be, it does not exist in Michigan, and therefore, may not be applied.

## VIII. CONCLUSION

For the reasons stated in this opinion, the trial court's order granting defendants' motion for summary disposition is affirmed.

/s/ Jane E. Markey
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel